CATHY HOWARD, Plaintiff-Appellee v. OAKWOOD HOMES CORP.,
Defendant-Appellant

No. COA98-1101

(Filed 6 July 1999)

**1. Appeal and Error— appealability—right to arbitrate**

The right to arbitrate a claim is a substantial right which may
be lost if review is delayed and an order denying arbitration is
therefore immediately appealable.

**2. Employer and Employee— dispute resolution program—
employment contract**

The trial court erred by denying defendant's motion to com-
pel dispute resolution and stay judicial proceedings where the
court concluded that the dispute resolution program (DRP) was
unenforceable due to lack of consideration. The evidence was
sufficient to show that plaintiff knew that the terms of the DRP
would apply to her should she continue her employment and both
plaintiff and defendant were mutually bound by the terms of the
DRP. Unlike a covenant not to compete, an arbitration agreement
requires a new promise from both parties which mutually
changes the nature of the employment relationship and this
mutual promise is new and sufficient consideration. Agreements
to arbitrate are favored and encouraged, whereas covenants not
to compete are disfavored.

Appeal by defendant from judgment entered 9 July 1998 by Judge
Catherine Eagles in Guilford County Superior Court. Heard in the
Court of Appeals 20 April 1999.

*Gray, Newell & Johnson, LLP, by Angela Newell Gray, for
plaintiff-appellee.*

*Constangy, Brooks & Smith, LLC, by W.R. Loftis, Jr., and
Virginia A. Piekarski, for defendant-appellant.*

MARTIN, Judge.

Defendant Oakwood Homes Corp. appeals the denial of its
motion to compel arbitration and stay judicial proceedings in the
underlying civil action. Briefly summarized, the record discloses that
defendant manufactures and sells homes throughout the United

**HOWARD v. OAKWOOD HOMES CORP.**

[134 N.C. App. 116 (1999)]

States and employs approximately 9,600 employees to that end. Plaintiff Cathy Howard began employment with defendant on a temporary basis in 1991, and accepted a full time position as an at-will employee in defendant's Title Department in September 1992.

On 1 May 1997, defendant implemented a Dispute Resolution Program ("DRP") requiring defendant and its employees to submit to dispute resolution as the exclusive means of resolving a variety of employment disputes, including those arising out of an employee's termination. The program provides that an employee with a claim may submit a written complaint to defendant's Director of Human Resources. The complaint is then investigated, and an answer is provided to the employee. If the employee is not satisfied, the employee may request non-binding mediation conducted by a mediator provided by the American Arbitration Association. If the defendant and the employee are unable to resolve the dispute through mediation, the employee may elect to submit the dispute to binding arbitration in which the arbitrator may grant any remedy or relief that would have been available through the courts. Under the DRP, all arbitrations are conducted in accordance with the Federal Arbitration Act ("FAA").

Prior to the 1 May 1997 effective date of the DRP, on 1 April 1997, defendant's Vice-President of Human Resources mailed to covered employees a copy of the DRP with a memorandum informing employees that both defendant and the employee would be bound by the program, and that an employee's decision to continue employment with defendant would constitute an agreement to be bound by the terms of the DRP. Additionally, on 7 April 1997, Paul Macksood, defendant's Director of Human Resources, distributed an office memorandum to employees informing them of scheduled meetings at which employees were to be instructed on the terms of the DRP and permitted to ask questions about it.

On 3 June 1997, following implementation of the DRP, plaintiff's employment with defendant was terminated for poor performance. Plaintiff complained that she was not issued a final warning prior to her termination. In response to her complaint, Mr. Macksood informed plaintiff that her claim was treated as though it had been brought under the DRP, that it had been investigated accordingly, and although defendant was not required to issue plaintiff a final warning, defendant would provide plaintiff another opportunity to improve her level of performance. Plaintiff's termination was rescinded. Mr.

Macksood reminded plaintiff by letter that she was bound by the DRP and attached a copy of the program thereto.

On 18 July 1997 plaintiff was again terminated for poor performance, and on 23 April 1998 she commenced the underlying civil action against defendant, alleging wrongful termination, negligent infliction of emotional distress, negligent supervision, negligent retention, and intentional infliction of emotional distress. On 12 June 1998 defendant moved for an order to stay judicial proceedings and compel plaintiff to submit her claim to dispute resolution pursuant to the DRP. The trial court denied defendant's motion, concluding that no agreement to arbitrate existed due to lack of consideration.

---

**[1]** Where a trial court's order, such as the order *sub judice*, fails to resolve all issues between all parties in an action, the order is not a final judgment, but rather is interlocutory. *First Atlantic Management Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 507 S.E.2d 56 (1998). While an interlocutory order is generally not directly appealable, such an order will be considered " 'if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review.' " *N.C. Ins. Guar. Ass'n v. Burnette*, 131 N.C. App. 840, 843, 508 S.E.2d 837, 839 (1998) (citation omitted); *see also* N.C. Gen. Stat. § 1-277, 7A-27. The right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable. *Burke v. Wilkins*, 131 N.C. App. 687, 688, 507 S.E.2d 913, 914 (1998).

**[2]** In its sole assignment of error, defendant argues that its motion to compel arbitration should have been granted, and that the trial court erred in concluding that the DRP was not an enforceable agreement due to lack of consideration. We agree.

We note at the outset that North Carolina " 'has a strong public policy favoring the settlement of disputes by arbitration' ", and that "[o]ur Supreme Court has held that where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." *Martin v. Vance*, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999) (citing *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91-92, 414 S.E.2d 30, 32 (1992)). Although arbitration is favored in the law, in order to be enforced, the underlying agreement must first be shown to be valid as determined by a common law contract analysis. *Routh v. Snap-On Tools Corp.*, 108 N.C. App. 268, 423 S.E.2d 791 (1992). It is a basic principle of contract law

that in order to be valid, an agreement must be supported by adequate consideration. *Deans v. Layton*, 89 N.C. App. 358, 368, 366 S.E.2d 560, 567, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 276 (1988) (citation omitted). "Mutual promises may constitute reciprocal consideration to support a contract." *Id.*

In *Vance, supra*, this Court recently ruled on the validity of an agreement to arbitrate in the employment context. The plaintiff in *Vance* had been employed with the defendant since 1990, and in 1994 the defendant implemented an alternative dispute resolution grievance procedure which was set forth in the personnel policy manual. In holding that the agreement was supported by adequate consideration, this Court stated,

. . . the agreement to arbitrate does not fail for lack of consideration. Mutual binding promises provide adequate consideration to support a contract. Where each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement.

*Vance* at 122, 514 S.E.2d at 310 (citations omitted). The *Vance* court noted that other jurisdictions have held that mutual promises to arbitrate constitute sufficient consideration, specifically citing the Fourth Circuit opinions in *O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir. 1997), and *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998). We too find such cases instructive.

In *O'Neil*, the plaintiff had been employed with defendant hospital since 1991. In 1994, the plaintiff signed an agreement that she would arbitrate all claims as a condition of her continued employment. *O'Neil* at 273. The plaintiff was subsequently terminated, and she filed suit, arguing that the agreement was invalid for lack of consideration where it was not binding on the hospital. *Id.* at 274-75. The Fourth Circuit, in holding that the agreement was mutually binding, stated that the employer's proffer of the agreement implied that both employer and employee would be bound by the agreement, and that the employer had consistently argued that it was bound by the agreement. *Id.* at 275. The court held that a mutual agreement existed, and that "a mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement." *Id.* (citation omitted).

In *Johnson*, the Fourth Circuit reversed the district court's conclusion that an arbitration agreement was void for lack of consideration, and held that an agreement between the parties to be bound by

the same rules was sufficient consideration to support the arbitration agreement. *Johnson* at 378. The court stated,

> As in O'Neil, both parties in this case agreed to be bound by the arbitration process for the resolution of any claim required to be submitted to arbitration under the Dispute Resolution Agreement. Therefore, we hold that the Dispute Resolution Agreement was supported by adequate consideration. . . . no consideration above and beyond the agreement to be bound by the arbitration process was required.

*Id.* Following this Court's holding in *Vance*, and applying the reasoning of *O'Neil* and *Johnson*, we hold that the mutual promise to abide by the provisions of the DRP and to relinquish the right to pursue certain disputes in court is sufficient consideration to support the DRP agreement.

Moreover, we are unpersuaded by plaintiff's argument that there was no mutual agreement to be bound by the terms of the DRP. As in *O'Neil, supra*, by proffering the DRP, defendant has at least implicitly agreed to be mutually bound by the DRP, and, as in *O'Neil*, defendant has consistently argued that it is bound by the DRP and has shown a commitment to arbitration by virtue of this action. Moreover, the DRP provides that all arbitrations are to be conducted pursuant to the FAA. The FAA requires that agreements to arbitrate be in writing, however, such agreements need not be signed. *See Real Color Displays, Inc. v. Universal Applied Technologies Corp.*, 950 F. Supp. 714 (E.D.N.C. 1997) (As in contract law, the FAA imposes no requirement that a written arbitration agreement be signed by the party to be charged, and it is sufficient that a party by act or conduct commits himself to the agreement.).

In *Vance*, we noted that where the language of a contract is clear and unambiguous, we must interpret the contract as written. *Vance, supra* (citing *Robbins v. Trading Post*, 253 N.C. 474, 117 S.E.2d 438 (1960)). The *Vance* court, upon noting that the plaintiff had actually signed the contract, the terms of which unambiguously bound her to arbitration, held it unnecessary to look beyond the writing to determine if mutual assent existed. *Id.* In the present case, however, plaintiff did not sign the agreement, and, while the terms of the DRP unambiguously bound her to the agreement should she continue employment through 1 May 1997, we look beyond the writing to determine if mutual assent to the terms of the DRP existed.

## HOWARD v. OAKWOOD HOMES CORP.

[134 N.C. App. 116 (1999)]

An examination of the record shows that plaintiff continued in defendant's employment with actual notice that the terms of the DRP would be mutually effective 1 May 1997, and she therefore evidenced her mutual assent to the terms of the DRP by continuing in her employment. Defendant mailed to plaintiff's home on 1 April 1997 a copy of the DRP as well as a memorandum regarding the requirements and effective date of the program. On 7 April 1997 defendant notified employees of the impending implementation, as well as a schedule of meetings where employees could learn and ask questions about the DRP. Plaintiff again received a copy of the DRP by mail on 24 June 1997 accompanied by a letter from Mr. Macksood informing her that her prior employment dispute had been handled pursuant to the terms of the DRP. Moreover, plaintiff, in a complaint filed with the Equal Employment Opportunities Commission, acknowledged existence of the DRP agreement and that the recission of her initial termination occurred as a result of DRP procedures. We hold such evidence to be sufficient to show plaintiff knew that the terms of the DRP would apply to her should she continue in her employment, and that by doing so, plaintiff mutually assented to the program. Both plaintiff and defendant were mutually bound by the terms of the DRP, and such mutuality provided the consideration necessary to support the agreement.

We, of course, are advertent to the decisional law in this State which holds that the prospect of continued employment is insufficient consideration to support a covenant not to compete where the employee receives "no change in compensation, commission, duties, nature of employment or other consideration in exchange for signing the agreement . . . ." *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 776, 501 S.E.2d 353, 355, *disc. review denied*, 349 N.C. 355, 525 S.E.2d 449 (1998). In *Milner Airco, Inc. v. Morris*, 111 N.C. App. 866, 870, 433 S.E.2d 811, 814 (1993), this Court held a non-compete agreement to be unsupported by sufficient consideration where the employer "made no new promise that he was required to keep in return for the promise not to compete."

Plaintiff argues that the principle of such cases should apply here. Unlike a covenant not to compete, however, an arbitration agreement requires a new promise from both parties which mutually changes the nature of the employment relationship in that both parties relinquish their right to pursue certain employment disputes in court. As stated above, this mutual promise is new and sufficient consideration to support the agreement. Moreover, the principle that continued

employment alone is insufficient consideration is applied in the context of covenants not to compete which invoke policy concerns and are disfavored by the law, whereas agreements to arbitrate are favored and encouraged. *See Cox v. Dine-A-Mate, supra* (in order to be valid, covenant not to compete must be shown to be reasonable and not against public policy); *Johnston County v. R.N. Rouse & Co., supra* (North Carolina has strong public policy favoring agreements to arbitrate).

Additionally, plaintiff argues that the DRP is egregious and violative of plaintiff's constitutional rights. However, the trial court's sole conclusion of law in denying defendant's motion to compel arbitration pursuant to the DRP was that no agreement to arbitrate exists between the parties "since there was no valid consideration." Plaintiff has not cross-assigned error to the trial court's failure to find and conclude, as an alternative basis for denying defendant's motion, that the DRP was egregious and violative of plaintiff's constitutional rights. We therefore do not consider plaintiff's argument. *See* N.C.R. App. P. 10(d) (appellee may cross-assign as error any action or omission of the trial court depriving appellee of alternative basis in law for supporting the trial court's order); N.C.R. App. P. 10(a) ("scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10"); *Albrecht v. Dorsett,* 131 N.C. App. 502, 508 S.E.2d 319 (1998).

The order of the trial court denying defendant's motion to compel dispute resolution and stay judicial proceedings is hereby reversed, and this case is remanded to the trial court for entry of an order granting defendant's motion.

Reversed and remanded.

Judges GREENE and McGEE concur.